UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CSX TRANSPORTATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRI COUNTY RECYCLING, <br><br> Defendant. | Case. No. 18-cv-12095-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                           July 17, 2019

## I. Introduction

Plaintiff CSX Transportation, Inc. ("CSX") has filed this lawsuit against Defendant Tri County Recycling ("Tri County") seeking the collection of a judgment owed to CSX by ABC&D Recycling. D. 6. CSX alleges that Tri County is liable to CSX for ABC&D Recycling's debt because Tri County's operation of ABC&D's business constitutes a *de facto* merger with and/or a continuation of ABC&D Recycling. D. 6 at 5. Tri County has moved to dismiss, or in the alternative, for summary judgment. D. 8. For the reasons stated below, the Court DENIES the motion.

## II. Standard of Review

### A. Motion to Dismiss

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim

for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

**B.     Summary Judgment**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence

that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.  Factual Background

The following facts are undisputed unless otherwise noted. ABC&D Recycling ("ABC&D") operated a construction and debris disposal facility (the "Facility") at 198 E. Street, Ware, Massachusetts (the "Property"). D. 6 ¶ 11. The Facility on the Property is bisected by rail tracks, which provide the Facility with access to rail services. D. 6 ¶ 12; D. 8 at 2. In 2011, CSX provided transportation services for ABC&D, transporting railcars from the Facility to landfills for disposal. D. 6 ¶ 14. On August 1, 2013, a court in this district entered judgment for CSX in a lawsuit against ABC&D for unpaid transportation services, late payment charges and finance charges in the amount of $427,530.36 (the "Judgment"). D. 6 ¶ 17; CSX Transp., Inc. v. ABC&D Recycling, Inc., Civ. A. No. 3:11-cv-30268-FDS (D. Mass. Aug. 1, 2013).

At the time of the Judgment, ABC&D Holdings owned one hundred percent of ABC&D. D. 6 ¶ 18. ABC&D Holdings is also the sole shareholder of ABC&D. D. 6 ¶ 38(b)(ii). George A. McLaughlin, III ("McLaughlin") is the sole member, one hundred percent owner and managing member of ABC&D Holdings. D. 6 ¶ 5.

On or about May 6, 2014, McLaughlin formed Tri County and transferred ABC&D's assets to Tri County, including equipment and vehicles. D. 6 ¶ 22; D. 8 at 2. Tri County also assumed ABC&D's debts. D. 6 ¶ 22; D. 8 at 2. In or about May of 2014, Tri County opened and resumed ABC&D's processing operations at the Facility on the Property. D. 6 ¶ 23; D. 8 at 2. CSX alleges that ABC&D Holdings continued ABC&D's operations at the Facility through at least February 2014 despite representing to CSX that it was not operational. D. 6 ¶ 21.

McLaughlin holds all officer and director positions of ABC&D, ABC&D Holdings and Tri County, with the exception of one director position at ABC&D, which is held by Matthew E. Burke. D. 6 ¶¶ 26-28; D. 8 at 2. ABC&D, ABC&D Holdings and Tri County have the same principal corporate office and agents for service: McLaughlin, c/o McLaughlin Brothers, P.C., at an address in Boston. D. 6 ¶ 25.

In July 2012, McLaughlin acquired a controlling interest in ABC&D. D. 12-1 at 4; see D. 8-1 ¶¶ 5, 6. McLaughlin attests that ABC&D ceased all operations in fall 2012. D. 8-1 ¶ 6. CSX disagrees, asserting that ABC&D continued operating until February 2014. D. 6 ¶ 21. McLaughlin had no ownership stake or management role in ABC&D when it incurred the debt to CSX reflected in the Judgment. D. 8-1 ¶ 5. McLaughlin, however, was owner, president and treasurer of ABC&D for at least six months during the pendency of the litigation underlying the Judgment—from February 2013 to August 2013. D. 12 at 13 (citing deposition of McLaughlin, D. 12-1 at 4).

McLaughlin purchased the remainder of ABC&D's stock on March 13, 2013. D. 8-1 ¶ 5. According to McLaughlin, Tri County's employees, officers and management are "entirely different" from the employees, officers and management that worked at ABC&D when it was in operation. D. 8-1 ¶ 8. Documents from the Corporations Division of the Secretary of the Commonwealth of Massachusetts indicate that McLaughlin is the President, Treasurer and Secretary of both companies and a Director of both companies. Compare D. 12-2 at 2, with D. 12-2 at 4.

According to McLaughlin, Tri County spent over $2,000,000 capitalizing its business operations. D. 8-1 ¶ 9. McLaughlin attests that ABC&D's assets and prior business operations were not in a condition in which they could have been reinstated after ABC&D shut down without

4

substantial expenditure.  Id.  McLaughlin also attests that in exchange for ABC&D's assets, Tri County agreed to assume ABC&D's secured debt of approximately $3,000,000 but did not assume the debt to CSX or any other unsecured debt.  D. 8-1 ¶ 7.  Finally, McLaughlin attests that Tri County operates its business from the same location where ABC&D operated but ABC&D did not own the real estate.  D. 8-1 ¶ 9.

On September 22, 2015, CSX sent a letter to Tri County stating that it had a "viable claim against Tri-County [] for the full amount of the outstanding judgment against ABC&D."  D. 8-1 at 4.  Tri County's attorney responded, disagreeing with CSX's "recitation of both the facts and the law."  D. 8-1 at 7.

## IV.     Procedural History

CSX instituted this action on October 5, 2018.  D. 1.  Tri County moved to dismiss, D. 5, and CSX filed an amended complaint, D. 6.  In light of the amended complaint, the Court denied the original motion to dismiss as moot.  D. 7.  Tri County then moved to dismiss the amended complaint, or, in the alternative, for summary judgment.  D. 8.  The Court heard the parties on this pending motion and took this matter under advisement.  D. 15.

## V.     Discussion

CSX argues that "Tri County Recycling stands in the shoes of ABC&D Recycling under the relevant theories of successor liability: *de facto* merger or mere continuation."  D. 12 at 2.  Accordingly, argues CSX, Tri County is liable to CSX for the Judgment.  Id.  Tri County asserts that 1) CSX's claim is improperly pled because it does not raise a separate equitable claim to impose successor liability on Tri County, 2) such an equitable claim would be barred by a three-year statute of limitations and 3) even if it were not barred, Tri County would be entitled to summary judgment because CSX cannot prove a *de facto* merger or continuation.

As a preliminary matter, the Court concludes that CSX's failure to plead a separate equitable claim does not bar it from seeking to enforce the Judgment under a theory of successor liability. Count I of the complaint is entitled "Collection of Judgment: Successor Liability for Mere Continuation and *De Facto* Merger." D. 6 at 5. Based on the plain language of that count, CSX seeks to enforce the Judgment against Tri County through one of two theories of successor liability. Accordingly, CSX has plausibly alleged the claim and given Tri County fair notice of its claim against it. Tri County cites no case for the proposition that the successor liability claim must be pled in a separate count from the claim to recover the Judgment from the alleged successor. The doctrine of successor liability is an equitable remedy, which is a "flexible tool[] to be applied with the focus on fairness and justice." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 559-60 (2008) (quoting Demoulas v. Demoulas, 428 Mass. 555, 580 (1998)). Accordingly, the Court will consider CSX's equitable claim as alleged in the amended complaint.

### A. Motion to Dismiss: Statute of Limitations

Tri County's timeliness contention turns on whether CSX's claim is subject to the three-year statute of limitations for tort claims, Mass. Gen. L. c. 260, § 2A, or the twenty-year statute of limitations for the enforcement of a judgment, Mass. Gen. L. c. 260, § 20. CSX argues that as a judgment creditor, it "maintains an unqualified right to bring a civil action on the Judgment" for twenty years. D. 12 at 5. Tri County, on the other hand, argues that an equitable claim that a successor company is liable for a predecessor company's debt based on *de facto* merger principles is a cause of action that "clearly sounds in tort, because it requires a finding that the successor, through its activity established under common law elements, harmed an innocent creditor," D. 8 at 7, and, therefore, the three-year statute of limitations should apply

6

In CNF First Assocs. II, L.P. v. Dickerman, Civ. A. No. 97-10564-RGS, 1999 U.S. Dist. LEXIS 23193 (D. Mass. Oct. 8, 1999), which CSX cites, a court in this district considered a claim by CNF First Associates ("CNF") that defendant Dickerman had fraudulently transferred the majority of his assets to his family and a personal friend to prevent the recovery of judgments owed to CNF. Id. at *2. Dickerman argued that the one-year limitations period applicable to actions against an estate should apply, while CNF argued that the twenty-year statute of limitations on a judgment claim should apply. Id. The court held that "a judgment creditor should have the statutory twenty years to collect from persons who conspire with a judgment debtor to defeat the judgment's execution." Id. at *15-16. Accordingly, CNF's claim was not time-barred. Id.

CSX also cites Madonna v. Francisco, Civ. A. No. 13-807, 2014 WL 981568, at *4 (E.D. Pa. Mar. 13, 2014), in which a Pennsylvania court held that the statute of limitations for the enforcement of a judgment under a theory of successor liability should come from the underlying claim—there, the enforcement of a judgment—rather than from the claim of successor liability. Id. (citing Davila v. Magna Holding Co., No. 97 C 1909, 1998 WL 578032, at *5-6 (N.D. Ill. Sept. 3, 1998)). There, the court reasoned that "successor liability is simply a means of putting another party in the same shoes as the party against whom a plaintiff has a claim," rather than forming the basis for the plaintiff's complaint. Id.

Tri County, on the other hand, asserts that the three-year statute of limitations for tort claims, Mass. Gen. L. c. 260, § 2A, applies. Tri County cites Moseley v. Briggs Realty Co., 320 Mass. 278 (1946) in support. In Moseley, a creditor obtained a judgment against a corporation for an unpaid debt, which the creditor was unsuccessful in enforcing. Id. at 280. Subsequently, the corporation received sufficient revenue to pay the debt, but exhausted that revenue by paying off other debts and liquidating dividends to preferred stockholders. Id. The creditor sued the

7

corporation and two of its directors pursuant to Mass. Gen. L. c. 156, § 37, which makes directors of a corporation jointly and severally liable "for declaring or assenting to a dividend if the corporation is, or thereby is rendered, bankrupt or insolvent, to the extent of such dividend." Id. at 281 (quoting Mass. Gen. L. c. 156, § 37). The Supreme Judicial Court concluded that the then-six-year statute of limitations on tort claims applied to the creditor's claim, rather than the statute of limitations for claims on judgments. Id. at 282-83.

In Foster v. Evans, 384 Mass. 687 (1981), however, the same court distinguished Moseley in considering an equitable claim. Foster involved a claim by a creditor attempting to apply a judgment against the defendant to a property that the defendant had transferred to a third-party, allegedly to avoid paying the plaintiff and other creditors. Id. at 696-97. The defendants argued that because actions to rescind fraudulent conveyances are subject to a six-year statute of limitations, and the conveyance of the property occurred more than six years before the plaintiff sued, the plaintiff's claim was time-barred. Id. at 696. The court explained that, like in Moseley, it would apply the statute of limitations of the "underlying claim." Id. at 697. The underlying claims were distinguishable in Moseley and Foster, however, because the claim in Moseley was based "upon a statutory tort," id. at 696 (citing Moseley, 320 Mass. at 283, 285), rather than an equitable claim, see id. at 694 (characterizing Foster's claim as a request for "equitable relief"). Because the suit was not based on a statutory tort, the court concluded it was subject to the twenty-year period applicable to actions on judgments. Id. at 697.

Tri County argues that Moseley, rather than Foster, should control here. Tri County argues first that unlike in Foster, CSX has not named the original debtor (ABC&D) as a party to this action. Second, Tri County argues that, unlike in Foster, CSX has not asserted that Tri County has received any fraudulent conveyances. Finally, Tri County argues that the reach-and-apply

8

defendant in Foster was not made generally liable under the prior judgment. Rather, the plaintiff could reach and apply the judgment debtor's interest in the property transferred to the reach-and-apply defendant in satisfaction of the judgment.

Tri County, however, has not cited any case for the proposition that failing to include the original debtor in a complaint alleging mere continuation or *de facto* merger is fatal to that claim. CSX has sufficiently alleged facts supporting its claim that Tri County is the same entity as ABC&D. Under CSX's theory of the case, CSX has effectively named ABC&D as a defendant because ABC&D now exists as Tri County. See Milliken, 451 Mass. at 558 (explaining that in cases imposing successor liability, "the predecessor corporation, for all practical purposes, has ceased to exist"). Similarly, the Court will not rely upon Foster to limit Tri County's liability at this stage in the case. In Foster, the reason for limiting the reach-and-apply defendant's liability to the property that had been fraudulently conveyed was that the claim was predicated on a fraudulent conveyance of property. In contrast, as explained above, "successor liability is simply a means of putting another party in the same shoes as the party against whom a plaintiff has a claim." Madonna, 2014 WL 981568, at *4. Following that principle, if ABC&D and Tri County are in fact the same entity, CSX's recovery would reflect the Judgment.[1] Finally, Tri County has not persuaded the Court that the absence of an allegedly fraudulent conveyance in this case makes the holding of Foster inapplicable.

In sum, the Court concludes that like in Foster, here the underlying claim is one for enforcing a judgment and the applicable statute of limitations is twenty years, as established by

---

[1] For the same reasons, the Court rejects Tri County's reliance upon David v. Zilah, 325 Mass. 252 (1950), in which, like in Foster, the court limited the plaintiffs' recovery from the reach-and-apply defendants to their interest in the property that had been fraudulently conveyed. Id. at 256.

9

Mass. Gen. L. c. 260, § 20. Accordingly, CSX's claim is timely, and the Court denies Tri County's motion to dismiss.

B. **Summary Judgment**

Tri County first argues that it is entitled to summary judgment because the undisputed facts show that CSX's claim is time-barred under the three-year statute of limitations on tort claims. As discussed above, however, the Court concludes that CSX's claim is subject to the twenty-year statute of limitations for judgment claims. The Court, therefore, rejects Tri County's motion for summary judgment to the extent it relates to the timeliness of the claim.

The Court now turns to Tri County's argument, that based on the undisputed facts, CSX cannot prove a *de facto* merger or mere continuation. CSX must ultimately prove one of these theories to qualify for an exception to the "general rule of no successor liability." Nat'l Gypsum Co. v. Cont'l Brands Corp., 895 F. Supp. 328, 336 (D. Mass. 1995). "The concept of 'de facto merger' has usually been applied to situations in which the ownership, assets and management of one corporation are combined with those of another, preexisting entity." Id. Similarly, "[t]he 'mere continuation' theory of successor liability 'envisions a reorganization transforming a single company from one corporate entity into another.'" Milliken, 451 Mass. at 557 (quoting McCarthy v. Litton Indus., Inc., 410 Mass. 15, 21-22 (1991)). *De facto* mergers and mere continuations "in practice refer to the same concept . . . and courts have often used the two terms interchangeably." Nat'l Gypsum Co., 895 F. Supp. at 336 (internal citation omitted). The Court considers the following factors under both theories of successor liability:

> whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation;

10

whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation."

Milliken, 451 Mass. at 557 (quoting Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 359-60 (1997)). "No single factor is necessary or sufficient" to sustain a finding of successor liability. Cargill, Inc., 424 Mass. at 360. CSX must also show it was harmed by the merger. Milliken, 451 Mass. at 559.

The Court first considers the continuity of business operations between ABC&D and Tri County. McLaughlin attests that Tri County's employees, officers and management are "entirely different" from the employees, officers and management that worked at ABC&D when it was in operation. D. 8-1 ¶ 8. CSX, however, disputes this assertion, at least as it relates to officers of the company, by noting that McLaughlin was the President, Treasurer and Secretary of both companies and a director of both companies. D. 12-2; D. 12-1 at 4. It is undisputed that Tri County operates a facility on the Property where ABC&D operated its facility. D. 8-1 ¶ 9; D. 12 at 8; D. 12-2. CSX has also alleged that ABC&D transferred its equipment and vehicles to Tri County, an assertion that Tri County accepted for the purposes of the motion to dismiss, D. 8 at 2, but has not otherwise addressed.

As to the continuity of shareholders, it is undisputed that McLaughlin had a one hundred percent interest in ABC&D. D. 8-1 ¶ 6. McLaughlin acquired a controlling interest in ABC&D (in July 2012), D. 12-1 at 4, before it ceased operating (in the fall of 2012, according to McLaughlin), D. 8-1 ¶ 6. McLaughlin also serves as the only officer or director of Tri County. D. 12-2. The record does not indicate whether any person other than McLaughlin has shares or an ownership interest in Tri County.

11

As to the third factor of ABC&D's cessation of operations, McLaughlin attests ABC&D ceased operating in the fall of 2012. D. 8-1 ¶ 6. CSX disputes this assertion, D. 6 ¶ 21, but has not submitted any evidence in support of its contention.

For the final factor, the record lacks admissible evidence showing whether Tri County assumed ABC&D's obligations that were necessary for the uninterrupted continuation of its normal business operations.

Viewing the facts in the light most favorable to the non-movant, CSX, and drawing reasonable inferences in its favor as is required at the summary judgment stage, the Court concludes that the undisputed facts do not demonstrate Tri County is entitled to judgment as a matter of law at this juncture. It is undisputed that McLaughlin acquired a controlling interest in ABC&D before it ceased operating. McLaughlin is now the sole officer and director of Tri County. It is further undisputed that Tri County operates a recycling and waste disposal entity on the same Property where ABC&D provided the same services after assuming $3,000,000 of ABC&D's secured debt while casting off its unsecured debt. A reasonable jury could find that CSX suffered harm from ABC&D and Tri County's actions. See Milliken, 451 Mass. at 561 (concluding that seller corporation's sale of assets to successor corporation "while shedding its debt obligations to unsecured creditors . . . [was] precisely the kind of harm to innocent creditors that the successor liability doctrine was designed to prevent").

## VI. Conclusion

For the foregoing reasons, the Court DENIES Tri County's motion to dismiss and DENIES without prejudice the motion for summary judgment, D. 8.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge